**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | |
|---|---|
| **ARNOLD L. HARMON, Jr.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:04-1156** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's Applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  This case is presently pending before the Court on cross-Motions for Judgment on the Pleadings. (Document Nos. 9 and 12.) The parties have submitted Memoranda in Support of their Motions for Judgment on the Pleadings (Document Nos. 10 and 13.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Arnold L. Harmon, Jr. (hereinafter referred to as "Claimant"), filed Applications for DIB and SSI in early April, 2002, alleging disability as of March 15, 2002, due to "a massive heart attack, short term memory loss, bi-polar disorder, long standing depression." (Tr. at 81, 91, 405.) The claims were denied initially and upon reconsideration. (Tr. at 27 - 28, 33 - 34, 409 - 411, 415 - 416.) On March 13, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 35 - 36.)  The parties convened for a hearing on September 30, 2003, with ALJ William B. Russell presiding. (Tr. at 417 - 470.) By decision dated June 8, 2004, ALJ Russell

determined that Claimant was not entitled to benefits. (Tr. at 12 - 24.) The ALJ's Decision became the final decision of the Commissioner on September 9, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 5 - 7.) On October 26, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[1] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

---

[1] These Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

3

>factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>     (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>     (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 22, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "coronary artery disease, S/P myocardial infarction in March 2002, bipolar disorder, and also has been diagnosed with panic disorder with agoraphobia, although his testimony suggests that his reclusiveness may be an affective disorder, impairments that are 'severe' within the meaning of Regulations . . .." (Tr. at 17.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 22, Finding No. 4.) The ALJ then found that Claimant had residual functional capacity and limitations to perform a

significant range of sedentary work as follows:

> The claimant retains the residual functional capacity to perform work at the sedentary level of exertion. He can lift 20 pounds occasionally, 10 pounds frequently, stand up for 2 hours in an 8-hour workday, maximum; and sit 6 hours in an 8-hour workday. He cannot be exposed to extremes of temperatures or hazards, can occasionally climb, balance,, stoop, kneel, crouch and crawl, and cannot operate a vehicle in the performance of his work activity. His mental impairment impacts to the extent that he requires the taking of Lithium and he should not be in a position where he would be a danger to others by the performance of his work activity if he was suffering fatigue because of extended period without sleep.

(Tr. at 23, Finding Nos. 8 and 13.) The ALJ found that Claimant could not perform his past relevant work. (Tr. at 23, Finding No. 9.) The ALJ found that Claimant was a "younger individual between the ages of 18 and 44", had a high school of high school equivalent education and no transferable skills from her past relevant work. (Tr. at 23, Finding Nos. 10, 11 and 12.) The ALJ concluded based upon the testimony of vocational expert Gina Baldwin that "[a]lthough the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples cited by the vocational expert witness include jobs as a surveillance system monitor . . .; non-emergency dispatcher . . .; and night watchman . . .." (Tr. at 23, Finding No. 14.) On this basis, benefits were denied. (Tr. at 23 - 24.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 31, 1963. (Tr. at 81.) He was therefore 39 years old at the time of the administrate hearing, September 30, 2003. (Tr. at 427.) Claimant indicated that he completed the tenth grand (Tr. at 96.) And testified that he obtained his GED in 1995. (Tr. at 427.) In the past, he worked as a truck driver, laborer, and as a weaver, fixer and warehouse person in the textile industry. (Tr. at 91, 427 - 434.)

The Medical Record

The Court has reviewed the medical evidence of record and will discuss it in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider Claimant's testimony in his analysis and hypothetical question to the vocational expert that, having bipolar disorder, he experienced manic episodes which lasted several days after which he had slept for forty eight hours. (Document No. 10, pp. 2 - 4.) The

Commissioner states in response that there is no objective medical evidence supporting Claimant's testimony that he experienced frequent manic episodes. The Commissioner further states that the ALJ nevertheless gave credence to Claimant's testimony that he experienced manic episodes followed by periods of fatigue by determining that Claimant could not perform work involving potential hazards to himself or others. (Document No. 13, pp. 9 - 11.)

## DISCUSSION

Claimant is essentially claiming that the ALJ did not give credit to his testimony that he experienced manic episodes as a symptom of his bipolar disorder which left him so fatigued that he needed to sleep for forty-eight hours afterwards. Claimant asserts that "[b]ipolar disorder by definition involves manic symptoms . . .." Claimant further asserts that there is no medical evidence in the record refuting his testimony; Dr. Tessnear, a medical expert who testified at the hearing, did not consider Claimant's need for sleep following manic episodes; and the ALJ did not include Claimant's need for sleep in his hypothetical. Claimant states that "the vocational expert . . . testified that more than one absence in a single month would not be tolerated by the employer and that the claimant could not work." (Document No. 10, pp. 2 - 4.) The Commissioner states that Claimant "did not say that he always slept for 48 hours after a manic episode; he said 'I have slept for 48 hours.'" (Document No. 13, p. 9.) The Commissioner further contends that there is no medical evidence supporting Claimant's testimony; Claimant did not have frequent manic episodes; and Claimant experienced some relief from sleeplessness from medications. (Id., pp. 9 - 13.)

A two-step process is used to determine whether a claimant is disabled by symptoms/pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b)

(1999); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (1999). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other

>symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
>(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.
>
>20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (1999.
>
>SSR 96-7p repeats the two-step regulatory provisions:
>
>>First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,
>>the symptoms cannot be found to affect the individual's ability to do basic work activities.
>>
>>Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th

Cir. 1983).

Claimant had a heart attack on March 15, 2002. In addition to his cardiac problems, Claimant was found to have a bipolar disorder. (Tr. at 136.) He was prescribed Seroquel.[3] (Id.) The record contains the July 30, 2002, Psychological Evaluation of Kelly Rush, M.A., and Dale Rice, M.A. (Tr. at 162 - 166.) They diagnosed "Bipolar Disorder, Most Recent Episode Depressed, Moderate." (Tr. at 164.) The record further contains the August 21, 2002, Psychiatric Review Technique Form of Dr. Rosemary Smith. (Tr. at 175 - 187.) Dr. Smith concluded that Claimant mental impairment was not severe and he experienced mild restrictions of activities of daily living and mild difficulties in maintaining social functioning and concentration, persistence or pace and had not experienced repeated episodes of decompensation. (Tr. at 185.) It appears that Claimant went to Southern Highlands Community Health Center on April 25, 2003, and was prescribed lithium. (Tr. at 328.) Dr. Alina Vrinceanu, a Staff Psychiatrist, stated in an Initial Psychiatric Evaluation of June 13, 2003, that "[h]e reports he has a sleep disturbance; he only gets two hours of sleep unless he takes a sleep aid." (Tr. at 325.) Dr. Vrinceanu stated further that "[s]leep is now good with Seroquel. If he doesn't take Seroquel, he feels like 'my mind cannot shut down.'" (Id.)

Claimant testified during questioning about his general physical condition at the September 30, 2003, hearing that he was inclined to become lightheaded and fatigued and had to lay down for a couple of hours about three times a week. (Tr. at 442.) Claimant stated that his emotional problems "kicked in in . . . January of this year." (Tr. at 443 - 444, 448.) He described how he felt when he experienced a manic episode as "[j]ust can't sleep, I mean, just bouncing off the walls, feel

---

[3] Seroquel is prescribed for the treatment of acute manic episodes associated with bipolar disorder. Among the common side effects of using Seroquel are drowsiness, dizziness and weakness.

like I've got all kinds of energy." (Tr. at 448.) Claimant testified that he had two manic episodes lasting three and four days since January, 2003. (Tr. at 449.) When asked how long he would need to sleep following such an episode, Claimant testified that "I have slept 48 hours." (Tr. at 469.) Dr. Tessnear indicated at the September 30, 2003, administrative hearing that Claimant was most limited in social functioning by virtue of his mental impairment (Tr. at 457.) and was mildly limited otherwise (Tr. at 457 - 458.). In presenting the hypothetical question to the vocational expert, ALJ Russell included the following:

> He additionally has some psychological problems which require the taking of lithium. He should not be in a position where he would be a danger to others by the performance of his work activity if he were suffering fatigue because of extended periods without sleep.

(Tr. at 461 - 462.) The vocational expert identified surveillance system monitor, non-emergency dispatcher and night watchman as jobs available in the regional and national economies which Claimant could perform. (Tr. at 462.) When Claimant's attorney asked the vocational expert to consider Claimant's testimony that he needed to lie down for a couple of hours three times a week, the vocational expert testified that "employers do not make accommodations for employees that need to lie down during the workday." (Tr. at 464.) Claimant's attorney also asked whether Claimant's need to sleep for 24 to 48 hours after a manic episode would eliminate jobs, and the vocational expert testified that "[i]t would depend on the number of times he went into a manic episode, and then required the sleep." (Tr. at 469.)

In his June 8, 2004, Decision, ALJ Russell provided a detailed summary of the evidence and testimony in considering Claimant's bipolar disorder. (Tr. at 13 - 17.) The ALJ clearly considered Claimant's mental impairment under the special technique and apparently adopted Dr. Tessmear's assessment of his limitations finding that Claimant had moderate difficulties in maintaining social

13

functioning and mild restrictions in activities of daily living and concentration, persistence or pace. (Tr. at 18.) The ALJ engaged in a symptoms/pain analysis and determined Claimant's residual functional capacity. Considering Claimant's mental impairment, the ALJ stated as follows (Tr. at 19.):

> His mental impairment impacts to the extent that he requires the taking of Lithium and he should not be in a position where he would be a danger to others by the performance of his work activity if he was suffering fatigue because of extended periods without sleep.
>
> In reaching the conclusion regarding the claimant's residual functional capacity, the undersigned has specifically considered the limitations and impairments alleged in the claimant's testimony and documentary records and finds that they are only partially credible. The lack of objective evidence and clinical findings in the record are out of proportion to the claimant's subjective complaints and do not support a conclusion that his limitations are of an intensity, frequency, or duration as to preclude the performance of all work activity (SSR 96-7p).

The Court finds that the ALJ considered the evidence of record as a whole and credited Claimant's testimony respecting his fatigue and need to sleep as symptomatic of his bipolar disorder to the extent that the evidence of record supported it. Accordingly, the Court finds Claimant's assertion that the ALJ failed to consider his testimony in his analysis of Claimant's symptoms and in presenting his hypothetical question to the vocational expert without merit. The ALJ's analysis in these respects is clearly consistent with applicable law and Regulations and supported by substantial evidence.

Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 9.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 13, 2006.

R. Clarke VanDervort
United States Magistrate Judge